## Ewing *versus* Ewing.

96   381
140   386

1. In ejectment plaintiff showed title to the premises in dispute in her husband, who died seised thereof, and devised the same to plaintiff. The defendant, who was the testator's son, claimed title by adverse possession during his father's lifetime and was permitted to testify in his own behalf, and on cross-examination also testified as to the circumstances of an alleged parol gift by his father to him ; *Held*, to have been error ; that defendant was within the proviso of the Act of April 15th 1869, and was therefore clearly incompetent to prove the facts and circumstances to which he testified as having occurred during the lifetime of his father, and that the testator must be regarded as the assignor of the plaintiff within the fair intendment and meaning of said act.

2. While the legislative purpose to establish a new rule of evidence by the Act of 1869, which declares that "no interest nor policy of law shall exclude a party or person from being a witness in any civil proceeding," is clearly expressed, the intention to exclude from its operation certain persons, disqualified on grounds of public policy, and cases in which inequality and consequent undue advantage would otherwise result, is equally manifest.

3. In general, where parties have dealt together or have sustained relations to each other out of which rights and obligations have sprung, each may be supposed to have an equal knowledge of the transaction or of the relations existing between them, and both, if living and of sound mind, are permitted to testify ; but if death or insanity has precluded one of them from testifying the other is not entitled to the undue advantage of being a witness in his own case.

4. Hess *v.* Gourley, 8 Norris 195, followed.

November 20th 1880.   Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.   SHARSWOOD, C. J., absent.

Error to the Court of Common Pleas of *Fayette county:* Of October and November Term 1880, No. 157.

Ejectment by Ann L. Ewing, widow and devisee of Nathaniel Ewing, deceased, against John K. Ewing, a son of said decedent.

At the trial, before Stowe, P. J. (of Court of Common Pleas, No. 2, of Allegheny county), the plaintiff claimed under the will of her husband, while the defendant claimed title by gift from his father and adverse possession for more than twenty-one years. The plaintiff proved title to the premises in her husband, who died seised thereof, having by his will, which was duly proved and admitted in evidence, devised the same to her.   The defendant filed an abstract, showing title in himself by adverse possession against his father since 1848, and also claimed title by parol gift from his father.

The defendant was offered as a witness in his own behalf, and was objected to on the ground that Nathaniel Ewing was dead, that defendant claimed title under him, and that plaintiff did likewise. Objections overruled.   (First assignment of error.)

The witness was then allowed to testify, to his own acts regarding his occupany, and to his dealings and conversations with his father from 1847 until his death in 1874.

The witness was then asked if he had any conversation with his

[Ewing *v.* Ewing.]

father about this time in regard to the payment of taxes, and if so, what it was. The witness answered "my impression is that it was a year or two before that." The plaintiff objected that this evidence was incompetent, for the reason that Nathaniel Ewing, with whom the conversation was alleged to have occurred, was dead. The court said: "I think the evidence, as offered, is competent." Objection overruled. The witness then proceeded to testify. (Second assignment.)

The plaintiff afterwards made the following motion: "The plaintiff by her counsel moves the court to strike out all the testimony of John K. Ewing, the defendant, as to all matters occurring prior to the death of Nathaniel Ewing, his father, for the reason that his own testimony, in connection with the undisputed record title of the plaintiff in evidence, shows that the testimony of the defendant was not competent or admissible under the Act of Assembly of April 15th 1869, entitled 'An act allowing parties in interest to testify,' &c."

Motion overruled and bill sealed for plaintiff. (Third assignment.)

Among the points presented by the plaintiff were the following, to which are appended the answers of the court:

That the defendant was not a competent witness in this case to any matter or thing occurring in the lifetime of his father, and the jury will disregard all of his testimony as to any matter or thing occurring prior to his death.

Ans. "Refused." (Fourth assignment.)

That all of the testimony of John K. Ewing, the defendant, in respect to his taking or holding the premises in dispute, during the lifetime of Nathaniel Ewing, deceased, is withdrawn from the jury, and is not to be considered by them in making up and rendering their verdict.

Ans. "Refused." (Fifth assignment.)

That all of the testimony of the defendant, John K. Ewing, with respect to improvements on the property during the lifetime of his father, Nathaniel Ewing, is withdrawn from the consideration of the jury.

Ans. "Refused.) (Sixth assignment.)

That the occupancy by this son of a house owned by his father is perfectly consistent with his father's title, and twenty-one years' possession would give no title, under the Statute of Limitations, unless the possession was held after the assertion of an independent right in himself.

Ans. "Refused. (Seventh assignment.)

The fact that the son allowed his father to pay the taxes, under assessments made to him, was a tacit acknowledgment upon the part of the son, that the title was in the father, and the statute did not commence to run while the taxes were being so paid.

[Ewing *v.* Ewing.]

Ans. " Refused." (Eighth assignment.)

The jury should disregard the evidence of the witnesses, given as declarations of defendant, made in ordinary conversation, simply speaking of the house as "his house," or "his home," without more, and without any evidence that the conversation related to any question or subject of ownership, or the title to the same, as such declarations refer to occupancy rather than ownership or title.

Ans. " Refused. (Ninth assignment.)

That the defendant, having shown by his own testimony, that the alleged gift was a promise by his father, made prior to May 1847, to give him (the defendant) the property at a future time, and that his father subsequently acquired title to the property, to wit: August 12th 1847, and that he, the defendant, went into the occupancy of the property without any evidence of any further promise or arrangement with his father, but with his permission on the 1st of April 1848, and remained in the property thereafter with his father's permission, and his father paying the taxes, he is in law presumed under this state of facts to have held the possession under his father.

Ans. " Refused." (Tenth assignment.)

Verdict for defendant, when plaintiff took this writ, and alleged that the court erred as set forth in the above assignments of error.

*W. H. Coldren* and *M. A. Woodward*, for plaintiff in error.— The defendant claims title against the devisee of his father. His claim of title rests on the double ground of a parol gift and adverse possession under it. His evidence is his own testimony as to the alleged gift by his father, and his alleged adverse possession; when and how he took possession; how he considered and treated, and conducted the possession during the twenty-six years following of his father's life—from 1848 to 1874—what his father said and did, and what he did and considered. And this testimony—barely making out a case, if it does so at all—being all capable of explanation or contradiction by his father, were he alive, is of such a character as to be almost wholly incapable of explanation or contradiction, now that his father's lips are closed in death. Surely, there is no question in the sense of the decisions but that John K. Ewing, the defendant, is adversary of his deceased father, who devised this property to the plaintiff; whether he claims title by gift, or by a possession which must be, and is, of such a character as in effect is hostile to the title of his father. All the facts sustaining this might be explained, answered or contradicted by his father. He might have shown the possession to be subject to his wishes, control and title. Can any case more clearly come within the spirit of "the proviso" of the Act of April 15th 1869, Pamph. L.

[Ewing *v.* Ewing.]

30, which declares that parties shall not be permitted to testify
" where the assignor of the thing or contract in action is dead."
" In the statutory sense the assignor of the thing or contract is he
whose rights therein or thereunder, at or before the time of his de-
cease, passed by his own act or by law to a party in the action."
And Nathaniel Ewing is clearly within this definition: Karns *v.*
Tanner, 16 P. F. Smith 297; Hanna *v.* Wray, 27 Id. 27;
Gardner *v.* McLallen, 29 Id. 403; Standbridge *v.* Catanach, 2
Norris 368; Evans *v.* Reed, 3 Id. 254; Hess *v.* Gourley, 8 Id
195.

The seventh, eighth and ninth assignments of error should be
sustained: Poorman *v.* Killgore, 2 Casey 372; Cox *v.* Cox, Id.
375; Bannon *v.* Brandon, 10 Casey 267; Bishop *v.* Lee, 3 Barr
217; Collins *v.* Collins, 2 Grant 120; Ackerman *v.* Fisher, 7 P.
F. Smith 459.

The authorities are uniform that where a parol gift of land can
be supported at all, it must be a positive, absolute and present gift
to take effect at once, and that possession be taken because of and
upon the gift, and that improvements be made which are beyond
the value of its use and not capable of accurate proof and compen-
sation: Collins *v.* Collins, *supra;* Whiting *v.* Pittsburgh Opera
House, 7 Norris 102; Hart *v.* Carroll, 4 Id. 508; Hood *v.*
Hood, 2 Grant 229; McKowen *v.* McDonald, 7 Wright 444;
Wack *v.* Sorber, 2 Whart. 387; Moore *v.* Small, 7 Harris 467,
McClure *v.* McClure, 1 Barr 378.

*W. H. Playford* and *Edward Campbell,* for defendant in error.
—The witness did not testify in his examination-in-chief to any-
thing that occurred between his father and himself. All such tes-
timony was forced out of him on cross-examination, against the wish
of defendant and his counsel. By this course the plaintiff waived
the objections to the competency of the witness, and made him
competent: Pattison *v.* Armstrong, 24 P. F. Smith 476. The
eleventh point of plaintiff was properly refused: Campbell *v.*
Braden, *post,* page 391; Sumner *v.* Murphy, 2 Hill (S. C.) 488.
(See following case of Campbell *v.* Braden.—REP.)

Mr. Justice STERRETT delivered the opinion of the court, Janu-
ary 3d 1881.

The contention involved in several of the specifications of error
is, that the defendant was an incompetent witness to prove any-
thing that occurred in the lifetime of his father, respecting the pos-
session or ownership of the lot in controversy. It is claimed that,
in the statutory sense of the term, his father, under whose will the
plaintiff claims title, was her assignor, and therefore defendant was
incompetent.

The Act of April 15th 1869 declares, in general terms, that " no

[Ewing v. Ewing.]

interest nor policy of law shall exclude a party or person from being a witness in any civil proceeding." The rule thus established, as a substitute for that of the common law, is undoubtedly broad enough to embrace the defendant; but the act, restrained as it is by the terms of the proviso, does not apply to certain persons and actions therein particularly designated, and hence the common-law rules of evidence are still in force as to the persons and actions thus excluded from the operation of the act. It is provided that the act shall not alter the then existing law so as to allow husband and wife to testify against each other, nor counsel to testify to the confidential communications of his client, and that it " shall not apply to actions by or against executors, administrators or guardians, nor where the assignor of the thing or contract in action may be dead, excepting in issues and inquiries *devisavit vel non,* and others respecting the right of such deceased owner between parties claiming such right by devolution on the death of such owner." Some of these provisions have been somewhat modified by subsequent legislation. The Act of March 4th 1870 authorizes either husband or wife to testify " in his or her own behalf in any proceeding for a divorce, in every case where personal service of the subpœna is made on the opposite party or said party appears and defends." By the Act of April 9th 1870, it is provided that " in all actions and civil proceedings * * * by or against executors, administrators or guardians, or in actions where the assignor of the thing or contract in action may be dead, no interest or policy of law shall exclude any party to the record from testifying to matters occurring since the death of the person whose estate, through a legal representative, is a party to the record." The supplement of June 8th 1874, enlarges the scope of the proviso by declaring that the act " shall not apply to actions by or against committees of lunatics, except as to matters occurring after the appointment of said committee;" and the Act of May 25th 1878 provides, " That in all civil proceedings in law or equity, * * * by or against surviving partners, no interest or policy of law shall exclude any party to the record from testifying to matters having occurred between the surviving partners and the adverse party on the record."

Several of these provisions have no direct bearing on the precise question under consideration, but they are here noticed for the purpose of better bringing into view the general scope and spirit of the act. While the legislative purpose to establish a new rule of evidence is clearly expressed, the intention to exclude from its operation certain persons disqualified on grounds of public policy, and cases in which inequality and consequent undue advantage would otherwise result, is equally manifest. One of the evident purposes of the proviso was to exclude certain cases in which it was impossible for the opposing parties to be placed on a footing

15 Norris—25

[Ewing *v*. Ewing.]

of substantial equality in regard to testifying. In general, where parties have dealt together or have sustained relations to each other out of which rights and obligations have sprung, each may be supposed to have an equal knowledge of the transactions or of the relations existing between them, and both, if living and of sound mind, are permitted to testify ; but if death or insanity has precluded one of them from testifying, the other is not entitled to the undue advantage of being a witness in his own case. The spirit of equality which pervades the act, forbids the application of the new rule in actions where the rights of a deceased person or a lunatic are represented by one of the parties, except as to matters occurring since the death of such person or the appointment of the committee of such lunatic, and matters between surviving partners and the adverse party on the record: Hess *v*. Gourley, 8 Norris 195. In that case it is said: " In determining the competency of a witness to prove a matter which occurred during the life of a decedent, the inquiry is whether the action is within the statute. This is not difficult when the suit is by or against an executor, administrator or guardian in his representative capacity. Nor is it in other cases, if the spirit of the statute be kept in view, and the persons intended by the word assignor be learned from the context rather than its technical definition."

The defendant was undoubtedly competent to prove anything that occurred after the decease of his father the plaintiff's testator ; but was he competent to prove what occurred before ? He undoubtedly was unless the action was one of those to which the proviso declares the act shall not apply, for example, " where the assignor of the thing or contract may be dead." If, in the statutory sense, the plaintiff's devisor was her assignor of the lot in controversy, then, by the very terms of the proviso, the act did not apply, and the defendant was therefore incompetent to prove any fact or circumstance that occurred in the lifetime of his father, tending to show that he acquired and held possession of the lot, either adversely to him or as his donee. This must be determined by the nature and character of the claim and defence, as disclosed by the testimony. The plaintiff, claiming as devisee under the will of her husband, proved that he acquired the title by deed of conveyance from Benjamin Hayden, in August 1847, and in connection therewith, gave in evidence the will, duly probated in February 1874, by which the property was devised to her in fee. The claim of title thus exhibited gave her a clear prima facie right of possession. On the other hand, the defendant, not questioning the goodness of the title acquired by his father in 1847, claimed under the Statute of Limitations, alleging " that he went into possession of the lot in dispute in the spring of 1848, claiming it as his own ; that he occupied and held it as such from that time until the bringing of this action in 1879 ; that from time to time he made valu-

[Ewing v. Ewing.]

able improvements, and in the meantime his ownership had never been disputed by any one." He was called as a witness in his own behalf, and under a general objection and exception to his competency on the ground that the plaintiff's devisor was dead, he was permitted to testify substantially as above stated. In doing so he refrained from testifying in chief to any understanding or transaction between himself and his father in relation to the property; but, on cross-examination, the fact was elicited that he went into possession in 1848, in pursuance of a parol gift from his father, and ever since held and claimed the property as his own. His testimony as to the inception of his claim and the character of his possession for a period of nearly thirty years was clear and positive; and under the charge of the learned judge, must have satisfied the jury that his title, under the statute, by adverse possession was complete. If, under a proper construction of the act, he was incompetent to prove what occurred in the lifetime of his father, it may be his misfortune; but the real or supposed hardship of any particular case cannot be considered in construing the statute.

In view of the evidence, showing distinctly the position in which the parties stood with reference to the title, the language of the proviso, as well as the spirit of the act, and the construction it has heretofore received, we are clearly of opinion that the testator must be regarded as the assignor of the plaintiff within the fair intendment and meaning of the act. As is said in Hess v. Gourley, supra: "In the statutory sense, the assignor of the thing or contract is he whose rights therein or thereunder, at or before the time of his decease, passed by his own act, or by law, to a party in the action." The title which the testator had to the lot in controversy, at the time of his decease, passed then by his will to the plaintiff, by whom the same title is now represented in this action. He was, therefore, in the proper sense of the term, the assignor of the thing in action. The case was one of the class which is excepted from the operation of the general rule of evidence prescribed by the Act of 1869, and the defendant was, therefore, clearly incompetent to prove the facts and circumstances to which he testified, as having occurred in the lifetime of his father in relation to the ownership and possession of the lot. He was adversary to the deceased assignor whose title, represented by the plaintiff in the action, his testimony tended strongly to defeat. The first six specifications of error are sustained.

In view of the nature of the defence that was interposed, we cannot say there was error in refusing to charge as complained of in the remaining assignments. The defendant did not rely on the alleged parol gift, except for the purpose of establishing the adverse character of his possession. His defence was that he went into possession in 1848, claiming the property in his own right and not in subordination to his father's title, and continued to so hold it

[Ewing *v.* Ewing.]

until his title under the Statute of Limitations was complete. Any fact or circumstance tending to show that defendant's possession was adverse was proper for the consideration of the jury. As was said in Campbell *v.* Braden, *post*, reported below, "The real question in such case is not so much what was intended by the donors, as what the donee's understanding was, what he claimed, what he did. Did he consider the gift absolute, and did he, under that idea, hold adversely to his father." This was substantially the question that was submitted to the jury, under the defendant's testimony and other evidence in the case. The learned judge instructed them that if the evidence as to the nature and character of the possession claimed by the defendant, was so clear and satisfactory as to convince them of its truth, their verdict should be in favor of the defendant. The error, as we have seen, was in permitting defendant to testify to what occurred during his father's lifetime, and in submitting this testimony to the jury. If he had been a competent witness, generally, there would have been no error of which the plaintiff would have had just reason to complain.

Judgment reversed, and a *venire facias de novo* awarded.